**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

Sarah Puckett,

        Plaintiff,

v.                                        Case No. 3:15-CV-193
                                                  Judge Thomas M. Rose

Village of Anna, Ohio, et al.,

        Defendants.

---

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT,** (DOC. 26)**, AND TERMINATING CASE.**

---

Pending before the Court is Defendants' Motion for Summary Judgment. (Doc. 26). Plaintiff Sarah Puckett filed a lawsuit against Defendants Scott Evans and the Village of Anna, Ohio asserting gender based discrimination in violation of the equal protection guarantees of 42 U.S.C. § 1983 as well as a claim under state law asserting pregnancy discrimination in violation of Ohio Revised Code §§ 4112.02(A) and 4112.99. (Doc. 1). Puckett decries that she was not hired as a part-time patrolman for the Village of Anna police department. Because no part-time police officer position existed in the Village of Anna, Defendants' motion will be granted.

**I.    Background**

Plaintiff Sarah Puckett has served as a police officer for Fort Jennings, Ohio for five years. (Puckett Dep. Vol. I at 8; Cotterman Dep. 12-14, PageID 170-72). Puckett also worked with the Jackson Center, Ohio police department as an auxiliary officer for six months. (Puckett

1

Dep. Vol. I at 18). She testified in her deposition that she was hired by the Village of Anna but that she was never placed on the street. (Puckett Dep. Vol. I at 13).

In November or December of 2012, Puckett met Defendant Village of Anna Police Chief Scott Evans at the home of Jackson Center Police Chief Joseph Cotterman. While Puckett was at Cotterman's home, Puckett mentioned not being entirely happy with her position at Fort Jennings. Chief Evans said that she could have a job with Anna. (Cotterman Dep Doc. 21, PageID 169, 171). Plaintiff took this as offering a position as a part-time patrolman. Cotterman understood that "he would put her on." (Cotterman Dep. Doc. 21, PageID 174). Puckett's memory was that Evans stated "Come over, fill out an application and I'll give you a job." (Puckett Dep. Vol. I at 48, 49). Puckett understood the application to be a formality. (Puckett Dep. Vol. I at 25).

Puckett later completed the steps necessary for hire, including filling out W-2s. (Puckett Dep. Vol. I at 26). She filled out her application for the Village of Anna Police Department on December 5, 2012 and handed it to Evans in person. (Puckett Dep. Vol. I at 29, 60). At the request of Chief Evans, Plaintiff brought in her certificates and diplomas. Evans told her that she had to go for a drug test, which she did. She also had a physical done at Wilson Memorial Hospital in Sidney. (Puckett Dep. Vol. I at 59-62). In the Wilson Memorial Hospital paperwork, the blank space next to "prospective employer" on her Health History Form is filled in with "Village of Anna." Volume I, ex. B.

She testified that she did not know that she was pregnant when she went to Wilson Memorial Hospital. Puckett claims that even though the Health History Form refers to the Village of Anna as being the "prospective employer," the offer of employment was already made. (Puckett Dep. Vol. I at 62, 63).

2

After the drug screen and physical, Chief Evans had Plaintiff come in to fill out W-4s and her PERS retirement paperwork. She received patches[1] and was told what uniform to purchase. Evans told Puckett at this time that he would get her sworn in in a couple of weeks. (Puckett Dep. Vol. I at 79 at patches at Exhibit G thereto). After she finished her paperwork, Chief Evans took her on a tour of the village, showing her where the new office was going to be and where the school was. She assumed that the Chief of Police did the hiring for the Village of Anna. (Puckett Dep. Vol. I at 83, 84). Puckett testified that Evans told her that he was badly understaffed and that she could have all the hours that she wanted and that they had a part-time position that he was looking to fill and that the position would be moving to full-time. (Puckett Dep. Vol. I at 88).

At this second meeting in Anna, after the tour, Evans introduced Puckett to other people there and said that she was going to be their newest officer. (Puckett Dep. Vol. I at 104). In Puckett's experience, villages have a common practice that the chief brings the person in that they want before the mayor and the mayor swears them in. (Puckett Dep. Vol. I at 85).

Puckett was unsure of the date to be sworn in but understood there was one other gentleman whom the Mayor was to swear in. (Puckett Dep. Vol. I at 86, 87). Puckett found out she was pregnant the day before she was to be sworn in as a Village of Anna police officer. She took the pregnancy test in January of 2013. (Puckett Dep. Vol. I at 63, 64). She called Evans and told him that she was pregnant. Puckett claims Evans said that it was not an issue and that he would swear her in at a later date—after she had the baby. (Puckett Dep. Vol. I at 96, 101).[2]

---

[1] Chief Evans testified he sometimes gives patches to applicants to thank them for their interest (Deposition Transcript of S. Puckett, Volume I, at 79; Doc. 22, Deposition Transcript of S. Evans, at PageID 207. Plaintiff concedes that some people collect patches from law enforcement agencies. Deposition Transcript of S. Puckett, Volume I, at 119).

[2] Chief Evans says Puckett told him she needed to withdraw her application, and he told her he would, and to let him know when she was interested in resuming the process (Doc. 22, Deposition Transcript of S. Evans, at PageID 207).

According to Puckett, she told Chief Evans that she could do paperwork and desk duties. (Puckett Dep. Vol. I at 107, 110, 111).  Puckett claims to have talked to Evans 1-2 times per month until she gave birth, during which talks he would tell her that he was still holding her job and that he was waiting on her to have her baby.  She testified that she offered to come in and do desk work, but Evans said that was not necessary—she should wait until she had her baby. (Puckett Dep. Vol. I at 112, 113).

Puckett had serious medical issues with her pregnancy, and her doctor took her off work from the Fort Jennings Police Department, where she worked as an auxiliary officer, from April of 2013 through November of 2013 (Deposition of S. Puckett, Volume II, at 207-10).

Puckett gave birth on September 11, 2013. (Puckett Dep. Vol. I at 115).  Plaintiff spoke to Chief Evans in June, July and August of 2013. (Puckett Dep. Vol. I at 115).  However, after she gave birth, efforts to reach Evans by phone failed.  She made over a dozen attempts before January of 2015, all without success. (Puckett Dep. Vol. I at 116-17, 120).  According to Puckett's telephone records, she called Chief Evans on July 29, 2013, July 30, 2013, September 16, 2013, October 30, 2013, December 30, 2013, January 2, 2014, January 3, 2014, and August 28, 2014, and all of the calls lasted one minute or less. (Deposition of S. Puckett, Volume III, at 247-248). She was routinely hung up on and found that the Village of Anna had hired others as auxiliary officers. (Puckett Dep. Vol. I at 121, 130, Exs. E and F).  Plaintiff's husband, John Puckett, himself a village police chief, advised Plaintiff to go to council over it. (John Puckett Dep. Doc. 20, PageID 87).

Chief Evans was on administrative leave from the Village of Anna from August 2013 through November of 2013. (Exhibit C, Declaration of S. Evans, at ¶4).  There was also debate occurring in the Village's council regarding the disbandment of the Village's police department

4

throughout 2013 and into 2014. (Ex. A, Decl. of N. Benroth, at ¶6).  Ultimately, the movement to disband the police department was tabled in January of 2015 (Id., S. Puckett Dep., Ex. G at 1).

Puckett decided to attend a Village Council meeting on January 27, 2015. (S. Puckett Dep. Vol. I at 142 and Ex. G).  Arriving at the council meeting, her cell phone rang while she was still in the parking lot.  Puckett heard the Mayor tell her that she did not need to attend the meeting.  Puckett informed him that she was already there.  When Puckett entered the building, the Mayor sent her over to the police department to talk to Chief Evans.  Evans showed her all of the paperwork she had filled out and showed where the Mayor had not signed off on swearing her in.  Eventually, Chief Evans yelled at her that she was making too big a deal out of the situation.  (Puckett Dep. Vol. I at 157.)  Puckett asserts that Evans told her that her pregnancy was a problem, that she could not work while pregnant, and that it was dangerous for both her and the baby.  (Id.)  Puckett retorted, "We'll just see what council has to say about this" and went into council chambers. (Id.)

> The minutes of the January 27, 2015 Council meeting recount Puckett's protestation:
>> that she was officially hired because she filled out the paperwork, was given patches and took a drug screen but the Mayor pointed out that she had not been sworn in.  She delivered her baby in September of 2013 and gave Chief Evans a call a week after the birth.  She alleges that Evans has never returned her calls.  At that time, the Village was not in a position to hire any more officers.  She noted that officers were recently hired but she was not contacted for the open positions.  Evans assured her that her name was still on the list.

Deposition of Sarah Puckett, Ex. G at 1.

On May 30, 2015, Sarah Puckett filed a complaint in this Court charging Defendants Scott Evans and the Village of Anna, Ohio with gender discrimination in violation of the equal

5

protection guarantees of 42 U.S.C. § 1983 and with pregnancy discrimination in violation of the state law guarantee found in Ohio Revised Code §§ 4112.02(A) and 4112.99. (Doc. 1).

## II. Legal Standard

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law.  Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. 56(c).  Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact.  *Id.*, at 323.  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S., at 250, (quoting Fed. R. Civ. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply

6

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S., at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not...obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the Court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

In addition to moving for summary judgment on Plaintiff's federal claim, Defendants seek summary judgment on Plaintiff's claim brought under Ohio law. In reviewing an Ohio claim, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the State.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998). Also,

to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994).

### III. Analysis

The Sixth Circuit has discussed Equal Protection gender discrimination claims as follows:

> Individuals have a right, protected by the Equal Protection clause of the Fourteenth Amendment, to be free from discrimination on the basis of sex in public employment. *Davis v. Passman*, 442 U.S. 228, 234-35 (1979). To make out such a claim, a plaintiff must prove that he suffered purposeful or intentional discrimination on the basis of gender. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977). As this Court has noted several times, "the showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section § 1983." *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988) (citing *Kitchen v. Chippewa Valley Schs.*, 825 F.2d 1004, 1011 (6th Cir. 1987); *Daniels v. Bd. of Educ.*, 805 F.2d 203, 207 (6th Cir. 1986); *Grano v. Dep't of Dev.*, 637 F.2d 1073, 1081-82 (6th Cir. 1980); *Lautermilch v. Findlay City Schs.*, 314 F.3d 271, 275 (6th Cir. 2003) ("To prove a violation of the equal protection clause under § 1983, [a plaintiff] must prove the same elements as are required to establish a disparate treatment claim under Title VII.") (quotation and citation omitted).

*Smith v. City of Salem*, 378 F.3d 566, 576-77 (6th Cir. 2004)

The Equal Protection claim is analyzed under federal law governing Title VII actions, and Puckett's state law claim is also analyzed under this same framework. *DeNoma v. Hamilton Cnty. Court of Common Pleas*, 2015 U.S. App. LEXIS 16589 (6th Cir. 2015). Title VII prohibits an employer's use of an employee's sex as a "motivating factor" for an adverse employment action, even if other factors motivated the action. Id. (citing 42 U.S.C. § 2000e-2(a)(1), (m)). Plaintiff may show discrimination by direct or indirect evidence.

8

Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. ScheringPlough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). See also *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) (explaining that direct evidence is similar to an employer stating, "I fired you because you are disabled").  The evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of pregnancy, but also that the employer acted on that predisposition. *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000).  In considering whether a comment by the employer constitutes evidence of discrimination, the Sixth Circuit has applied four factors:

> (1) Whether the disputed comments were made by the decision maker; (2) Whether the alleged comments related to the decision-making process; (3) Whether the statements were vague, ambiguous, or isolated remarks; and (4) Whether the disputed remarks were made proximate in time to the [adverse employment decision].

*Cooley v. Carmike Cinemas*, 25 F.3d 1325, 1330 (6th Cir. 1994).

Plaintiff pointedly decries not being hired as a part-time officer.  Under Ohio law, the village mayor is the appointing authority for full-time and part-time police officers. O.R.C. §737.16.  Before the village mayor can appoint a full-time or part-time police officer, the mayor first must be given legislative authority to do so by the village council. Id. This depends on whether the village has funding in its budget to hire a full-time or part-time police officer (Exhibit A, Declaration of N. Benroth, at ¶4).

The Village of Anna has only established the position of a full-time police officer under its ordinances. Village of Anna, Ohio, Code of Ordinances, Title III, Chapter 33, §33.020.  There is no legal authority for a part-time police officer to be hired in Anna, and there is no funding that has been earmarked for such a position (Exhibit A, Declaration of N. Benroth, at ¶9, 11).

9

Even Plaintiff's witness Joe Cotterman, Chief of Police of Jackson Center, Ohio testified that as Chief of Jackson Center, he had authority to present matters to the Mayor of Jackson Center, but that the Mayor had ultimate authority. (Cotterman Dep. Doc. 21, PageID 161).

Thus, while in Plaintiff's initial conversation with Chief Evans after she told him she was pregnant, where she alleges that he told her that he would keep her job as a part-time officer, and "she would be sworn in after she has her baby," demonstrates direct evidence of a willingness to discriminate, Chief Evans was not the decision maker, and no part-time position existed for Chief Evans to hold for Puckett.

That Chief Evans was not the decision maker could be overcome, given the facts of the case. The Sixth Circuit recognizes that an "influential recommender" may be liable under § 1983, without being the final decision maker, if the recommendations are shown to be sufficiently influential. See, e.g., *Stinebaugh v. City of Wapakoneta*, 630 Fed. Appx. 522, 530, n.2 (6th Cir. 2015)(citing *Ward v. Athens City Bd. of Educ.*, No. 97-5967, 1999 U.S. App. LEXIS 22766, 1999 WL 623730, at *8 (6th Cir. Aug. 11, 1999). There is no evidence to support a contention that the Mayor relied upon Chief Evans' recommendations, indeed Chief Evans testified that the mayor would rarely ask for his input in hiring decisions, outside of basic questions about credentials or background checks, and the mayor had rejected one or two applicants that Chief Evans had recommended (Doc. 22, Deposition of S. Evans, at PageID 210). However, given that Evans did not forward Puckett's paperwork to the Mayor, (see Defendants' Motion for Summary Judgment, Doc. 26, PageID 359), the Mayor had no choice but to follow Evans' opinion about Puckett. Because Evans' decision regarding Puckett was the final decision on the matter, his discriminatory reason could be imputed to the Mayor.

Defendants are only saved by the absence of the position Puckett decries not receiving. "I understood was that my position was going to be as part-time with the Village of Anna, not auxiliary." (S. Puckett Depo, Vol. I, 87). "He told me…that I could have all the hours that I wanted. He said that they had a part-time position that he was looking to fill and that soon that position would be moving to full-time because they were looking at annexing in a housing section on the southeast side of the village on the other side of I-75." (S. Puckett Depo, Vol. I, 88.) There is no evidence that the Village of Anna had a part-time police position at any point in time relevant to this lawsuit, nor that funding existed for such a position.

Puckett's complaint claims to have been denied not an auxiliary position, but a position as a "part-time patrolman." Doc. 1 at PageID 3, ¶7. That Puckett does not seek an auxiliary position is emphasized by her recitation that Chief Evans promised her "all the hours that I wanted." (S. Puckett Dep., Vol. I, 88.) Auxiliary officers were authorized to work only up to 25 hours a week. (Ex. A, Decl. of N. Benroth, at ¶12).

As a matter of law, no adverse employment decision occurred, because there was no part-time position in the Village of Anna Police Department. There cannot be a "failure to hire" claim when the position Puckett believes she was hired or promised to be hired for does not exist. *Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358 n. 44 (1977)("the *McDonnell Douglas* formula…does demand that the alleged discriminatee demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought."); see also *Lula v. Network Appliance*, 255 F. App'x 610, 612 (3d Cir. 2007)("the position did not remain open and was immediately deactivated."); and *Miller v. Rayonier, Inc.*, 2001 WL 1134732, at *4 (S.D. Ga. Aug. 1, 2001)(Defendant "could not

11

have discriminated on the basis of race or any other factor because the positions did not exist."). Thus, in the instant case, there was no adverse employment decision.

As for Plaintiff's claims against the Village of Anna, liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) requires an underlying constitutional violation. See, e.g., *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014); *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000)(Krupansky, J.). Given the Court's determination that no constitutional violation occurred, there can be no *Monell* liability against Anna in this matter. Moreover, Puckett's complaint fails to allege the existence of any unconstitutional policies in Anna, and Puckett has identified no such policies in discovery, or that such policies were a "moving force" behind the alleged violation. Accordingly, there is no viable *Monell* claim against Anna based upon any village policies.

**IV.    Conclusion**

Because no part-time police officer position existed in the Village of Anna, precluding an adverse employment action by denial to it, Defendants' Motion for Summary Judgment (doc. 26) is **GRANTED**. The captioned cause is hereby **TERMINATED** upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, January 19, 2017.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

12